

# In the Missouri Court of Appeals
# Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| A.F., by and through her next friend L.F., | ) | No. ED103056 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. John D. Warner, Jr. |
| HAZELWOOD SCHOOL DISTRICT, | ) | |
| BRENDA RONE and ELIZABETH | ) | |
| BRANDS, | ) | Filed: |
| | ) | March 22, 2016 |
| Respondents. | ) | |

A.F., by and through her next friend, L.F., appeals from the judgment dismissing her petition for failure to state a claim against her teacher, principal and school district that was not barred by official and sovereign immunity. We affirm.

A.F. alleged in her petition that she was a student at McNair Elementary School in the Hazelwood School District during the 2007-2008 school year. Brenda Rone was the principal at the time, and A.F.'s teacher was Elizabeth Brands. A.F. alleged she was "subjected to repeated bullying, including physical harassment, physical assault, sexual harassment and sexual assault by a fellow student, [K.S.]." She alleged that there was a School District Student Behavior Guide ("the Guide") in place at that time that set forth the rules and regulations to be followed regarding bullying, including physical harassment and assault, as well as sexual harassment and assault. The Guide also allegedly "set forth the consequences when a student failed to meet the standard of behavior required by [the District]" and "required that rules be enforced fairly, firmly

and consistently." The District and the individual defendants were alleged to have been negligent by failing to separate, supervise and discipline K.S. At the time of "the occurrence," Brands was allegedly in a master's degree program paid for by the District. A.F. alleged that K.S. was a participant in Brands's coursework for that program and this was the reason the defendants would not separate K.S. from her. She also alleged that the District had insurance that provided coverage "for the incident in question" and waived sovereign immunity.

The defendants filed a motion to dismiss for failure to state a claim, alleging that A.F.'s claims were barred under the doctrines of sovereign and official immunity and she had not pled facts sufficient to show any exceptions thereto. The court granted the motion to dismiss without explanation. A.F. filed a motion to reconsider, which was denied also without explanation. This appeal follows.

We review the trial court's grant of a motion to dismiss de novo. Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008). "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." State ex rel. Henley v. Bickel, 285 S.W.3d 327, 329 (Mo. banc 2009). A plaintiff's averments are taken as true, and all reasonable inferences therefrom are liberally construed in the plaintiff's favor. Id. Where, as here, the court gives no basis for its dismissal, we must presume it was based on one of the grounds stated in the motion to dismiss. Duvall v. Lawrence, 86 S.W.3d 74, 78 (Mo. App. E.D. 2002). We review only the grounds in the motion and must affirm if dismissal was appropriate on any ground supported by the motions. In re Estate of Austin, 389 S.W.3d 168, 171 (Mo. banc 2013).[1]

---

[1] The defendants raise two grounds for dismissal in their brief that were not asserted in their motion to dismiss and, thus, will not be considered on appeal—one regarding the application of the Coverdell Act to bar these claims and one regarding the failure to allege the duty element of the negligence claim.

In her first point on appeal, A.F. contends that she sufficiently pled a claim against Rone and Brands that was not barred by official immunity. We disagree.

Employees of a public school district are, like other public employees, entitled to official immunity. See Woods v. Ware, 471 S.W.3d 385, 391 (Mo. App. W.D. 2015). Official immunity is a judicially-created doctrine that "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008). Official immunity is intended to provide protection for these employees "who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." Id. at 611. The goal of the doctrine is "to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." Id.

Thus, the key to official immunity is whether the public employee was performing a discretionary task, for which there is immunity, or a non-discretionary ministerial task, for which there is not. "A discretionary act requires the exercise of reason and discretion in determining how an act should be done or what course of action should be pursued." Woods, 471 S.W.3d at 392. A ministerial function, on the other hand, is one of a clerical nature that the employee "is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Id. Thus, a public employee is only liable for a ministerial act if the conduct violates either a departmentally-mandated duty or a duty imposed by statute or regulation. Nguyen v. Grain Valley R-5 School District, 353 S.W.3d 725, 730 (Mo. App. W.D. 2011). A departmentally-mandated duty may arise from sources other than statutes or

3

regulations, such as from departmental rules, the orders of a superior or the nature of the employee's position. Id.

"Absent allegations averring the existence of a statutory or departmentally-mandated duty and a breach of that duty, a petition fails to state a claim that is not barred by the doctrine of official immunity as a matter of law." Boever v. Special School District of St. Louis County, 296 S.W.3d 487, 492 (Mo. App. E.D. 2009); State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 445 (Mo. banc 1986). In order to survive a motion to dismiss in which official immunity is raised, there must be on the face of the pleadings "specific facts" demonstrating that the employee failed to perform that mandated duty. Vaughn v. Genasci, 323 S.W.3d 454, 456 (Mo. App. E.D. 2010). The existence and breach of that duty is the plaintiff's burden to plead. Stephens v. Dunn, 453 S.W.3d 241, 251 (Mo. App. S.D. 2014).

Here, the allegations regarding Rone's and Brands's duties are not specific enough to survive the motion to dismiss. The only source of any duty alleged in the petition is the School District Student Behavior Guide. But the Guide itself was not attached or incorporated by reference to the petition,[2] nor is any reference made in the petition to any particular rule, regulation or consequence that is allegedly set forth in the Guide. Rather, the petition makes only general allegations that the Guide contained rules, regulations and consequences related to bullying. The petition then generally states that the Guide "required the rules to be enforced fairly, firmly and consistently" and that Rone and Brands failed to discipline K.S. "in accordance with" the Guide. From these allegations, we can at best infer that the Guide imposed some duty on Rone and Brands to enforce the consequences set forth therein. But without more specificity

---

[2] A.F. has included the Guide in the appendix to her brief on appeal, claiming that it had been produced by the defendants in discovery after the filing of her second amended petition. There is nothing in the record to suggest that the trial court was presented this document, much less that it considered it despite being a matter outside the pleadings, which would have required conversion of the motion to dismiss to one for summary judgment. As such, it will not be considered.

there is no way to determine that this duty was non-discretionary. In fact, the allegation that the rules are to be enforced "fairly" suggests the contrary.[3] If the employee was mandated to impose certain consequence on a student without discretion, without exercising any judgment in the matter, then there would be no need to refer to fairness. Enforcing these rules "fairly" implies that the employee will have to use her own judgment to form an opinion about whether imposing a particular consequence will be just. Therefore, it cannot be deemed a non-discretionary act.

A.F. also alleged that Rone and Brands were "performing ministerial acts" and "had no discretion in handling the discipline of K.S." But these conclusory statements are unsupported by the factual allegations and need not be taken as true. "[C]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted." Hendricks v. Curators of University of Missouri, 308 S.W.3d 740, 747 (Mo. App. W.D. 2010). The petition simply does not contain sufficiently specific facts demonstrating the existence of a mandated duty and breach thereof to survive the motion to dismiss on grounds of official immunity. Point I is denied.

In her second point on appeal, A.R. contends that she sufficiently pled a claim against the District that was not barred by sovereign immunity. We disagree.

Sovereign immunity is the longstanding common law rule that the State is not subject to tort liability without its consent. Metropolitan St. Louis Sewer District v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 921 (Mo. banc 2016). Sovereign immunity is the rule, not the exception. Id. at 921-22. It is not an affirmative defense, and therefore the plaintiff bears the burden of pleading with specificity those facts giving rise to an exception to sovereign immunity when suing a public entity. Richardson v. City of St. Louis, 293 S.W.3d 133, 137 (Mo. App.

---

[3] A.F. misquotes her own petition in the brief when she refers to this allegation as merely "requiring the rules be enforced," without including the qualifying phrase "fairly, firmly and consistently." This is a key phrase that affects the meaning of the allegation, and should have been included.

E.D. 2009). Two such exceptions are those found in Section 537.600, for injuries arising out of the operation of a motor vehicle or a dangerous property condition, neither of which is alleged here.

A.F. contends that she pled another exception to sovereign immunity by alleging that the District was performing a proprietary function, not a governmental function, and therefore the claim is not barred. This proprietary-government dichotomy applies to limit the immunity of municipalities. Because municipalities operate as both political subdivisions of the State and independent corporations, immunity bars only those claims arising out of the performance of a municipality's governmental functions, not its corporate or proprietary ones. See Crouch v. City of Kansas City, 444 S.W.3d 517, 521 (Mo. App. W.D. 2014). In contrast to a municipality, "[a] school district is in no sense a municipal corporation with diversified powers, but is a quasi public corporation, the arm and instrumentality of the State for one single and noble purpose, [that is] to educate the children of the district." Taylor v. Klund, 739 S.W.2d 592, 593 (Mo. App. E.D. 1987). Therefore, as we and other courts have stated before, it would seem that school districts should be protected by sovereign immunity to the same extent as the State, not in the limited way municipalities are immune. See id.; see also Patterson v. Meramec Valley R-III School District, 864 S.W.2d 14, 15 (Mo. App. E.D. 1993).

But there is at least one Supreme Court case, on which A.F. relies, in which the Court treated a school district as if it were a municipal corporation by applying the proprietary-governmental distinction to the school district's operation of a radio station. State ex rel. Allen v. Barker, 581 S.W.2d 818, 824 (Mo. banc 1979). We long ago concluded that more recent Supreme Court cases cast doubt on this decision and on the applicability of the distinction to school districts. See Taylor, 739 S.W.2d at 593. And although Barker has not been overruled,

6

we continue to question its precedential value in light of other statements by the Supreme Court both before and since. For instance, in State ex rel. New Liberty Hospital District v. Pratt, the Court stated that traditionally the governmental-proprietary distinction applied only to municipalities. 687 S.W.2d 184, 186 (Mo. banc 1985). It noted that Barker had been read by some courts of appeals as authorizing the application of this distinction to school districts, but nevertheless declined to address "either the *existence* or the propriety of such a deviation from the traditional rule." Id. at 188 n.1 (emphasis added). This comment suggests the Court may not have even recognized Barker as authority on this point, much less persuasive or binding authority.

That same day in 1985, in State ex rel. Missouri Department of Agriculture v. McHenry, the Supreme Court cited Pratt for the proposition that "[t]he proprietary-governmental dichotomy applies only in the law of municipal corporations, and not to activities of the state." 687 S.W.2d 178, 181-82 (Mo. banc 1985). It then noted, without even mentioning Barker, that "[a] school district enjoys sovereign immunity, and there is no need to invoke the proprietary-governmental analysis." Id. at 184 n.5. McHenry also cited Rennie v. Belleview School District—handed down *before* Barker—in which the Court stated that "to enter the maze of the governmental-proprietary dichotomy" would "serve no useful purpose" in a case involving a school district and not a municipality. 521 S.W.2d 423, 424 (Mo. banc 1975). Other cases have also questioned the viability of Barker as authority for the application of the distinction to any entity other than municipalities. See State ex rel. Board of Trustees of City of North Kansas City Memorial Hospital v. Russell, 843 S.W.2d 353, 360 n. 8 (Mo. banc 1992) (noting "some confusion" to whether distinction applies to any public entities other than municipalities, recognizing only that it "may" apply to school districts with citation to Barker); Anderson v. State, 709 S.W.2d 893,

7

896 (Mo. App. W.D. 1986) (not to be followed on other grounds) ("[w]hatever may be said of Barker, the court made it clear in McHenry, that the proprietary-governmental dichotomy applies only to municipal corporations and not to activities of the state").

Although we believe the weight of authority supports the conclusion that the proprietary-government distinction does not apply to school districts, we need not decide the issue here because the petition does not demonstrate that the District was performing a non-governmental function.

Governmental functions are generally those performed by the entity for the common good of all, whereas proprietary functions benefit only the entity in its corporate capacity. The alleged negligence in this case arises entirely from the District's failure to properly discipline or supervise the student who was harassing A.F. Disciplining and supervising students while at school are simply part of a school district's overall purpose of educating the students and, therefore, are governmental functions. See Taylor, 739 S.W.2d at 593. A.F. points to her allegation that the District's actions were motivated by a "private concern" that Brands complete the master's degree program it was funding. She contends that this shows the District's conduct did not serve the general purpose of education but rather served a "special, private benefit" of the District. But the particular defendant's conduct and the motives behind it are less important than the generic nature of the activity. Russell, 843 S.W.2d at 359. The District's handling of student discipline and supervision in this case was part of its broader generic governmental function of providing students an education. Moreover, paying for faculty to earn advanced degrees also clearly benefits this overall governmental function, and thus cannot be deemed a proprietary matter.

As with the conclusory allegations regarding official immunity, we need not take as true A.F.'s allegation that the District was performing a propriety function when it failed to discipline K.S. in accordance with the Guide. See Hendricks, 308 S.W.3d at 747. Nor do the other factual allegations support such a conclusion. The petition simply does not contain sufficiently specific facts demonstrating the existence of an exception to sovereign immunity to survive the motion to dismiss on that ground. Point II is denied.

In her third point on appeal, A.F. contends she sufficiently pled that the District carried liability insurance, which constituted a waiver of sovereign immunity. We disagree.

In addition to the exceptions discussed above, Section 537.610 provides that sovereign immunity may be waived by the purchase of insurance covering tort claims. We will construe any such waiver narrowly; that is, the extent of the waiver is "expressly dictated, and limited, by the terms of the insurance policy." Topps v. City of Country Club Hills, 272 S.W.3d 409, 415 (Mo. App. E.D. 2008). Because this is an exception to the general rule of sovereign immunity, the plaintiff must plead with specificity those facts demonstrating the exception. Id. The plaintiff shoulders the burden of proving the existence of an insurance policy and that the terms of the policy cover the plaintiff's claim. Id.; see also Brennan by and through Brennan v. Curators of the University of Missouri, 942 S.W.2d 432, 436-37 (Mo. App. W.D. 1997).

Here, the entirety of the insurance waiver allegation is that the District "has insurance through the United School Insurance Council, which provides coverage for the incident in question" and thereby has waived sovereign immunity in this matter.[4] It is unclear to what "incident in question" A.F. is referring; the other allegations in the petition allude only generally to the repeated bullying of A.F. Mention is made of "the occurrence" elsewhere in the petition,

---

[4] The defendants point out that A.F. cited Section 71.185 in her petition, and the only applicable waiver of sovereign immunity based on insurance for a school district is in Section 537.610. Because she failed to otherwise plead this waiver with specificity, the erroneous statutory citation is not dispositive.

9

but no facts are pled as to the details of that or any other particular incident of bullying to which the District responded in a negligent way. The defendants are alleged to have failed to do a number of things, but none of those allegations are tied to any particular instance of bullying or detailed in any way as to time, place and circumstances. Thus, the allegation that the insurance covered this "incident" is conclusory, and the allegation that the coverage therefore waived sovereign immunity is a conclusion of law. Once again, we are not required to take any such conclusions as true when reviewing a motion to dismiss. See Hendricks, 308 S.W.3d at 747. Since A.F. did not sufficiently plead the insurance waiver to sovereign immunity, it was proper to dismiss the petition on that ground. Point III is denied.

Dismissal of the claims against the individuals in this case was appropriate because they were barred by official immunity. Dismissal of the claims against the District in this case was appropriate because they were barred by sovereign immunity, which was not waived by insurance. The judgment is affirmed.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.