

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| E.M. by and through her mother and next friend, MELANEE MCINNIS, | ) ) ) | |
| Appellant, | ) ) | No. ED108227 |
| vs. | ) ) | |
| GATEWAY REGION YOUNG MEN'S CHRISTIAN ASSOCIATION, ST. LOUIS PUBLIC SCHOOLS, MICHAEL HOLLOMAN, and JOHN DOE and/or JANE DOE, | ) ) ) ) ) | Appeal from the Circuit Court of the City of St. Louis

Honorable Joan L. Moriarty |
| Defendants, | ) ) | Filed: April 21, 2020 |
| and | ) ) | |
| TAMEKA WIGGINS, | ) ) | |
| Respondent/Cross-Appellant. | ) ) | |

The plaintiff, E.M., by and through her mother and next friend, Melanee McInnis, appeals the judgment entered by the Circuit Court of the City of St. Louis dismissing her petition for negligence against her teacher, the defendant Tameka Wiggins, for failure to state a claim. E.M.'s petition alleged that she disclosed to Wiggins that another teacher was pursuing a relationship with her, that Wiggins failed to report E.M.'s disclosure to State authorities or school authorities, and that E.M. was then sexually assaulted by the other teacher. Wiggins cross-

appeals, claiming the trial court erred in declining to dismiss E.M.'s cause of action against her on the additional bases of sovereign immunity and official immunity.

We conclude that section 210.115 RSMo. (2016),[1] which requires reporting of suspected child abuse to State authorities, creates only a duty to the general public under the public-duty doctrine. Likewise, we conclude that the St. Louis School District's Board of Education regulation P4843, which requires reporting of any complaint of an employee's sexual harassment of students to specified school and district authorities, creates only a duty to the general public under the public-duty doctrine. Neither section 210.115 nor School Board regulation P4843 creates a duty to any particular student through a special, direct, and distinctive interest of the student.

Because E.M. does not have a special, direct, and distinctive interest in the reporting requirements set forth in either section 210.115 or School Board regulation P4843, she cannot plead a negligence claim against her teacher, the defendant Wiggins. Thus, the trial court properly dismissed E.M.'s petition against Wiggins for failure to state a cause of action. Further, because Wiggins prevailed in obtaining dismissal of E.M.'s petition based on the public-duty doctrine, Wiggins is not aggrieved by the trial court's judgment, which rejected dismissal on the bases of sovereign immunity and official immunity. Therefore, we affirm the trial court's judgment.

**Factual and Procedural Background**

In the fall of 2016, E.M. was a 15-year-old high-school student in the St. Louis Public School District ("the school district"). Defendant Michael Holloman was a physical education instructor employed by Gateway Region Young Men's Christian Association ("the YMCA") and

---

[1] All statutory references are to RSMo. (2016).

hired by the school district to teach physical education. Holloman was E.M.'s physical education teacher. Defendant Tameka Wiggins was another of E.M.'s teachers at her high school. E.M. alleges, among other things, that Holloman pursued an inappropriate sexual relationship with her, engaged in inappropriate physical contact with her, and took video recordings of E.M. and other female students during exercise class. E.M. asserts that she disclosed to Wiggins that Holloman was trying to start a relationship with her, E.M. Despite E.M.'s disclosure, Wiggins did not report E.M.'s complaint about Holloman either to State authorities or school authorities. E.M. maintains that Holloman later sexually assaulted her.

E.M. filed negligence claims against the YMCA, the school district,[2] Holloman, Wiggins, and an unnamed school district employee responsible for screening and hiring employees, as well as a claim for assault and battery against Holloman. E.M.'s first amended petition alleges that "YMCA and [the school district] and their employees had a duty to intervene in the contact between Defendant Holloman and E.M., and to protect E.M. from any inappropriate relationship, contact, touching or advances from Defendant Holloman." E.M.'s petition further states:

14. On or about October 11, 2016, E.M. attended the Soldan High School prom, which was being held at the Hilton Hotel in the City of St. Louis.

15. Defendant Holloman made contact with E.M. while she was at the prom, and asked to meet her outside of the hall where the prom was taking place.

16. E.M. met Defendant Holloman, who asked her to accompany him to his hotel room in the Hyatt Regency Hotel in the City of St. Louis, ostensibly for the purpose of providing her with information regarding a modeling career.

17. When E.M. accompanied Defendant Holloman to his room, he began to fondle E.M., and forced E.M. to engage in acts of sodomy and intercourse. E.M., who was fifteen (15) years old at the time, was statutorily raped by Defendant Holloman.

18. As a result, E.M. has sustained damage, including treatment through counseling, mental distress and medical expenses.

---

[2] The trial court granted the school district's motion for judgment on the pleadings based on sovereign immunity. E.M. then filed her first amended petition to add Wiggins and an unnamed school district employee as defendants.

3

Wiggins filed a motion to dismiss based, in the alternative, on sovereign immunity, official immunity, and the public-duty doctrine. The trial court rejected Wiggins's motion on the bases of sovereign and official immunity. The court ruled that Wiggins is not entitled to sovereign immunity protection because E.M. sued Wiggins in her individual capacity. The trial court further ruled that Wiggins is not entitled to official immunity because her duty under St. Louis Board of Education regulation P4843 ("School Board regulation P4843") to report E.M.'s complaint of sexual harassment was mandated, involved no exercise of discretion, and thus was a ministerial duty.

The trial court, however, granted Wiggins's motion to dismiss based on the public-duty doctrine under section 210.115, the child-abuse reporting statute. The court ruled that the duty to report suspected child abuse under section 210.115 is owed to the general public, and so E.M.'s negligence claim against Wiggins is barred by the public-duty doctrine. The trial court did not address whether the reporting mandate under School Board regulation P4843 created a general duty to the public or a duty to E.M. in particular.

The trial court certified its judgment for immediate appeal under Rule 74.01(b), finding that Wiggins's dismissal from the suit disposed of a distinct judicial unit and there was no just reason for delay. E.M. appeals the dismissal of her claim against Wiggins, and Wiggins cross-appeals the trial court's denial of her motion to dismiss based on sovereign immunity and official immunity.

## Discussion

E.M.'s claims against Wiggins stem from her alleged failure to report her knowledge of Holloman's sexual misconduct toward E.M. either to the State's child-abuse authorities or school authorities. E.M. claims the trial court erred in dismissing her cause of action against Wiggins

4

under the public-duty doctrine because she, E.M., had a special, direct, and distinctive interest in the ministerial duty to report that Wiggins breached. Wiggins counters that neither section 210.115 nor School Board regulation P4843 entitle E.M. to pursue a private cause of action against her. Wiggins also cross-appeals, claiming the trial court erred in declining to dismiss E.M.'s negligence count against her based on sovereign immunity and official immunity.

Rule 74.01(b) Certification

Before addressing the merits of this appeal, we have a duty to determine whether this Court has jurisdiction. *Wilson v. City of St. Louis*, No. SC 97544, 2020 WL 203137, at \*1 (Mo. banc Jan. 14, 2020). A judgment is appealable as a "final judgment" under section 512.020(5) if it resolves every claim, or at least the last unresolved claim, in a lawsuit. *Id*. at \*3. Rule 74.01(b) provides an exception to the general rule that a final, appealable judgment leaves no unresolved claims in a lawsuit. *Id*. at \*4. The trial court may certify for immediate appeal a judgment resolving one or more, but fewer than all, of the claims or parties when the court expressly finds no just reason for delaying the appeal until all claims are resolved. *Id*.

A "final judgment" for purposes of appeal under section 512.020(5) must satisfy the following criteria. *Id*. at 5. First, it must actually be a judgment, meaning that it must fully resolve at least one claim in a lawsuit, and must establish all the rights and liabilities of the parties with respect to that claim. *Id*. Second, the judgment must be "final," either because it disposes of all claims—or the last claim—in a lawsuit, or because it has been certified for immediate appeal pursuant to Rule 74.01(b). *Id*.

> A judgment is eligible to be certified under Rule 74.01(b) only if it disposes of a "judicial unit" of claims, meaning it: (a) disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court. Determining whether these criteria are met is a question of law and depends on "the content, substance, and effect of the order," not the

circuit court's designation.

*Id.* (citing *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997).

If, as a matter of law, a judgment is eligible for Rule 74.01(b) certification, the trial court may, but is not required to, certify the judgment for immediate appeal under Rule 74.01(b). *Id.* The 74.01(b) certification is a matter of discretion. *Id.* It is based on whether the trial court is persuaded and expressly finds no just reason for delaying appeal of this judgment until entry of a final judgment disposing of the last claim. *Id.*

A judgment could be eligible for certification under Rule 74.01(b) because it meets the definition of a "judicial unit," but the trial court in its discretion should not make that certification if resolution of the remaining claims by the trial court could affect, or even moot, appellate review of the claims already resolved. *Id.* at 6.

> By the same token, certification of an otherwise eligible judgment may not meet the "no just reason for delay" test under Rule 74.01(b) if the resolved claims and the unresolved claims are intertwined such that an appellate ruling on the partial judgment could affect the rights of someone who is not party to that judgment (and, therefore, not a party to the appeal) but who remains a party to the unresolved claims still pending in the circuit court.

The trial court should not exercise its discretion to certify a judgment for appeal under such circumstances. *Id.*

Here, the circuit court dismissed the only count against Wiggins, thus disposing of all claims involving her. As a result, the trial court resolved all rights and liabilities as between E.M. and Wiggins. Further, the claim against Wiggins differed from E.M.'s claims asserted against the other defendants in that Wiggins was the only defendant whose negligence was claimed to arise from her failure to report Holloman's alleged abuse of E.M. after E.M. disclosed to Wiggins. We therefore have jurisdiction to hear the appeal of the judgment dismissing Wiggins, and we

6

determine that the trial court did not abuse its discretion in certifying its judgment under Rule 74.01(b). [3]

## Standard of Review

We review *de novo* the trial court's grant of a motion to dismiss. *A.F. v. Hazelwood School Dist.*, 491 S.W.3d 628, 631 (Mo. App. E.D. 2016). A motion to dismiss for failure to state a claim is solely a test of the petition's adequacy. *Id.* We take the plaintiff's averments as true, and we liberally construe all reasonable inferences in the plaintiff's favor. *Id.* We review only the grounds contained in the motion to dismiss, and we must affirm if dismissal was appropriate on any ground supported by the motion. *Id.*

## Dismissal Based on the Public-Duty Doctrine

The trial court dismissed E.M.'s negligence count against Wiggins based on the public-duty doctrine. The court ruled that the requirement for teachers to report suspected child abuse to State authorities under section 210.115 creates only a duty to the general public rather than a duty to a particular child such as E.M. Thus, the trial court concluded, the public-duty doctrine bars E.M.'s negligence claim against Wiggins.[4] On appeal, E.M. contends the trial court erred because E.M. had a special, direct, and distinctive interest in the ministerial duty to report that Wiggins breached. Wiggins counters that the trial court correctly dismissed on this basis because the public-duty doctrine applies.

### *The Public-Duty Doctrine*

The public-duty doctrine provides that a public employee is not civilly liable for the breach of a duty she owes to the general public rather than to a particular individual. *Southers v.*

---

[3] E.M.'s claims against other defendants remain pending, and this opinion does not address those claims.
[4] The trial court did not consider whether Wiggins's duty to report complaints of sexual misconduct under School Board regulation P4843 fell within the public-duty doctrine.

7

*City of Farmington*, 263 S.W.3d 603, 611 (Mo. banc 2008). This public-duty rule rests on the absence of a duty to the particular individual in contrast to the duty owed to the general public. *Id*. The doctrine is meant to provide protection to modestly compensated public servants, and to permit public servants to do their work without distracting concerns about liability. *Id*. at 614.

The public-duty doctrine does not insulate a public employee from all liability because the employee could still be found liable for a breach of ministerial duties in which an injured party had a "special, direct, and distinctive interest." *Id*. at 611-12. This exception comes into play when injury to a particular, identifiable individual is reasonably foreseeable as a result of the public employee's breach of duty. *Id*. at 612. Whether an individual has such a special, direct, and distinctive interest depends on the facts of each case rather than on broad pronouncements about the usual status of relevant functions. *Id.* In addition, the protections of the public-duty doctrine are not intended to be limitless, and just as the doctrine of official immunity does not apply to conduct that is willfully wrong or done with malice or corruption, the public-duty doctrine does not apply when defendant public employees act in bad faith or with malice. *Id*.

The public-duty doctrine is not an affirmative defense, but instead defines the legal duty the defendant public employee owes the plaintiff. *Id*. When the public-duty doctrine applies, it negates the duty element required for a plaintiff to prove negligence. *Id*. Consequently, a plaintiff cannot establish all of the required elements of a negligence claim for injuries she sustained as the result of a public employee's alleged breach of a duty owed to the community as a whole. *Id*.

To determine whether the public-duty doctrine applies to Wiggins, we examine whether her obligation to report Holloman's inappropriate conduct involved a duty to the public generally, or whether E.M. had a special, direct, and distinctive interest in Wiggins's duty to

8

report. That Wiggins was acting within the scope of her job as a teacher when E.M. disclosed Holloman's conduct is not enough to determine that her obligation to report the misconduct involved a public duty. *Id*. at 619. The public-duty doctrine cannot insulate a defendant from liability when she owes a duty to a particular individual for the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest. *Id*. However, for the reasons discussed below, this exception based on a ministerial duty owed to a particular individual does not apply here.

*Section 210.115 RSMo.*

Missouri's child-abuse statute is meant to encourage reporting of suspected child abuse to the State's Children's Division, and to ensure that the Children's Division investigates such reports. *Nelson v. Freeman,* 537 F.Supp. 602, 605-06 (W.D. Mo. 1982). Specifically, section 210.115.1 RSMo. (2016), in effect at the time of the events pled in E.M.'s petition, provided in relevant part:

> When any . . . teacher, principal or other school official . . . has reasonable cause to suspect that a child has been or may be subjected to abuse or neglect or observes a child being subjected to conditions or circumstances which would reasonably result in abuse or neglect, that person shall immediately report to the [Missouri children's] division . . . .

The parties do not cite any Missouri case that is directly on point concerning section 210.115 and the public-duty doctrine, and our own research reveals none. Although not binding on this Court, we find instructive several federal cases that apply Missouri law in holding that the duty to report suspected child abuse under section 210.115 is a duty owed to the general public. *Doe A v. Special School Dist. of St. Louis County,* 637 F. Supp. 1138, 1148 (E.D. Mo. 1986). *See also Thelma D. v. Bd. of Educ. of City of St. Louis*, 669 F. Supp. 947, 950 (E.D. Mo. 1987)(finding that Missouri child-abuse reporting statute does not create duty flowing from teacher to plaintiff students); *Nelson*, 537 F. Supp. at 610 (holding that the Missouri Child Abuse

9

statute creates only a duty to the public and not to individuals, and therefore cannot support a cause of action in favor of individuals).

In Missouri, a duty to the individual complaining must exist before an act can be said to be negligent. *Doe A*, 637 F. Supp. at 1148. Generally, no duty flows from one individual to another to protect the other from harm unless the person harmed was placed in danger by the first individual. *Thelma D.*, 669 F. Supp. at 950. Here, E.M. asserts that section 210.115 created a duty for Wiggins to report Holloman's conduct toward E.M. However, section 210.115 creates a duty owed to the general public, rather than a duty owed to any particular individual. *Doe A*, 637 F. Supp. at 1148. Without a specific duty to particular individuals, section 210.115 does not support a private cause of action in favor of individuals. *Id*. *See also Bradley v. Ray*, 904 S.W.2d 302, 314 (Mo. App. W.D. 1995)(finding no private cause of action implied under section 210.115).

E.M. argues that once she disclosed Holloman's inappropriate conduct directly to Wiggins, E.M. had a specific, direct, and distinctive interest in Wiggins's duty to report Holloman's inappropriate conduct because injury to E.M., a particular, identifiable individual, was reasonably foreseeable. We disagree that E.M.'s disclosure to Wiggins transformed Wiggins's duty owed to the general public under section 210.115 to a duty owed to E.M. in particular.

In *Nelson v. Freeman*, in connection with the duty to investigate reports of abuse of particular children, the court stated:

> Clearly, plaintiffs are correct in asserting that once a report has been made, a duty arises to investigate. But the public duty to investigate imposed by the statute does not suffice to establish a specific duty to these plaintiffs as individuals, the breach of which would, under applicable Missouri law, entitle plaintiffs to a private cause of action against the defendant officials and employees of the State of Missouri.

537 F. Supp. at 611. E.M.'s disclosure to Wiggins does not render Wiggins's duty under section 210.115 an individual duty to E.M.

Therefore, to the extent that E.M. seeks to rely on the reporting requirements of section 210.115 to establish that Wiggins owed a duty to her individually, she fails to state a claim against Wiggins.

## *St. Louis Board of Education Regulation P4843*

The school district addresses extensively in its regulations the issue of sexual harassment. School Board regulation P4843 provides in relevant part:

> The Board of Education is committed to maintaining a work environment for employees and students that is free from all forms of discrimination, including sexual harassment. In addition, it is the published policy of the Board of Education that no employee and/or student in the St. Louis City Public School District shall, on the basis of sex or as a result of sexual harassment, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity.
>
> **SEXUAL HARASSMENT DEFINED:**
>
> ***
>
> Sexual harassment of students by school employees is prohibited regardless of whether the employee's conduct is "welcome" or otherwise invited. For purposes of this policy and regulation only, the prohibition includes all full-time, part-time, substitutes, and other employees, including all volunteers and any non-employee who visits school premises and/or school activities, including off-campus school sponsored activities.
>
> **NON-EXCLUSIVE EXAMPLES OF SEXUAL HARASSMENT**
>
> ***
>
> **Sexual harassment of Students**
>
> In addition to the examples set forth above, the unique circumstances of students may result in harassment of students that is not immediately recognized as sexual harassment in an adult only context, but nonetheless requires a response from the District.
>
> ***
>
> **ENFORCEMENT OF SEXUAL HARASSMENT POLICY**
>
> ***
>
> **Students**

11

Each building level administrator or other District employee with student supervision responsibilities is responsible for maintaining an educational and work environment free from sexual harassment. It is the policy of the District that each building level administrator or other District employee with student supervision responsibilities, shall take immediate and appropriate actions to enforce the District's sexual harassment policies and regulations, including but not limited to the following:

1. The building level administrator shall provide an in-service regarding sexual harassment (including sexual harassment involving students) to all staff . . . .
2. Provide sexual harassment instruction to all students in grades kindergarten through twelve . . . .
3. Removal of all vulgar or sexually offensive graffiti from the building.
4. All homeroom teachers shall discuss the District's sexual harassment policy and regulations with their students . . . .
5. All teachers, counselors, and administrators shall provide appropriate instruction on the procedures for reporting incidents of sexual harassment within the educational setting on [an] as needed basis.
6. The building level administrator shall take prompt action to investigate all complaints of sexual harassment.
7. The building level [administrator] shall take appropriate disciplinary action, to remedy and prevent future occurrences.
8. Any failure to implement these responsibilities appropriately and satisfactorily shall be cause for disciplinary action up to and including termination of employment.

***

**DISCIPLINE/CONSEQUENCES**

***

**Students [sic] Complaints of Sexual Harassment**

***

2. Any employee who permits or engages in the sexual harassment of a student shall be subject to disciplinary action, up to and including termination from employment.

3. Any employee who receives a complaint of sexual harassment involving a student who does not immediately forward the complaint to the principal and the District's Title IX Coordinator, shall be subject to disciplinary action, up to and including termination from employment.

The trial court did not address School Board regulation P4843 in the context of the

public-duty doctrine, having already found that section 210.115 creates a duty to report that is

12

owed to the general public only. E.M. argues that School Board regulation P4843 creates a duty owed to her in particular by Wiggins because she disclosed to Wiggins that Holloman sought a relationship with her, E.M., thus giving E.M. a special, direct, and distinctive interest. We conclude, however, that the duty to report sexual harassment created by regulation P4843, like the duty to report child abuse created by section 210.115, is a duty owed to the general public, not a duty owed to particular individuals.

As regulation P4843 states, "The Board of Education is committed to maintaining a work environment for employees and students that is free from all forms of discrimination, including sexual harassment." The regulation continues that "[s]exual harassment of students by school employees is prohibited . . . ." The language of the regulation indicates that the school district implemented the regulation to protect all children in its schools in a manner similar to the manner in which section 210.115 was enacted to protect all children in Missouri. Further, the enumerated enforcement actions that school district personnel are required to take in connection with students specify responsibilities to instruct, guide, and protect all students in the school system and do not suggest that any particular student has a special, direct, and distinctive interest.

Regulation P4843 protects all students and all employees throughout the school district, and also applies to "volunteers and any non-employee who visits school premises and/or school activities, including off-campus school sponsored activities." The regulation further states that each "[d]istrict employee with student supervision responsibilities is responsible for maintaining an educational and work environment free from sexual harassment." By its own language, School Board regulation P4843 is directed to all students, employees, volunteers, and even visitors in the St. Louis City public school system. The regulation is designed to maintain a safe

13

environment and to protect everyone in the school system, thus rendering the reporting duty a duty owed to the general public. *See Cooper v. Planthold*, 857 S.W.2d 477, 480 (Mo. App. E.D. 1993)(stating police department's special order to remove belongings from arrestees "is multidirected, and is meant to protect all in custody; not simply the particular prisoner who is injured"). In addition, maintaining a public educational and work environment free of sexual harassment is a duty owed to the general public, and not to any particular individual, such as E.M.

Further, as discussed earlier in connection with Wiggins's duty to report Holloman's inappropriate conduct under section 210.115, E.M.'s disclosure to Wiggins does not transform Wiggins's duty to report under School Board regulation P4843 into a specific duty owed to E.M.

Whether an individual has a special, direct, and distinctive interest depends on the facts of each case rather than on broad pronouncements about the usual status of relevant functions. *Southers*, 263 S.W.3d at 612. The protections of the public-duty doctrine are not intended to be limitless. However, under the specific facts of this case, to the extent that E.M. relies on School Board regulation P4843's reporting requirements to establish that Wiggins owed a duty to her in particular, E.M. fails to state a claim against Wiggins.

<u>Cross-Appeal: Sovereign Immunity and Official Immunity</u>

Wiggins cross-appeals, seeking reversal of the trial court's ruling that neither sovereign immunity nor official immunity protects her from E.M.'s suit. The trial court determined that Wiggins is not entitled to the protection from suit afforded by sovereign immunity because E.M. sued Wiggins in her individual capacity. The trial court further ruled that Wiggins is not entitled to the protection of official immunity because her duty under school district regulation P4843 to

14

report E.M.'s complaint of sexual harassment was mandatory, involving no exercise of discretion, and thus was a ministerial duty.

We need not consider these issues. Section 512.020 grants a right of appeal to "any party to a suit aggrieved by any judgment of any trial court in any civil cause." The right to appeal is statutory, and it is essential that a party be aggrieved by the judgment from which she appeals. *City of North Kansas City v. K.C. Beaton Holding Co., LLC*, 417 S.W.3d 825, 833 (Mo. App. W.D. 2011). A party cannot be aggrieved when, as here, the trial court has granted all of the relief requested. *Id*. Because we affirm the dismissal of E.M.'s petition against Wiggins based on the public-duty doctrine, Wiggins has obtained all of the relief she sought, namely dismissal of E.M.'s claim against her. As a result, Wiggins is not aggrieved by the judgment, and so has no basis to appeal the trial court's determination of the sovereign immunity and official immunity questions.

**Conclusion**

We hold that section 210.115, which requires reporting of suspected child abuse to State authorities, and the St. Louis Public Schools' regulation P4843, which requires reporting any complaint of sexual harassment to specified school authorities, each create a duty to the general public. Such reporting requirements do not create a duty to particular individuals. Because E.M. cannot establish the element of a duty owed to her by Wiggins, E.M. cannot plead a negligence claim. Thus, the trial court properly dismissed E.M.'s petition against Wiggins for failure to state a cause of action.

In addition, because Wiggins has prevailed in obtaining dismissal of E.M.'s petition based on the public-duty doctrine, Wiggins is not aggrieved by the trial court's judgment, which

15

rejected dismissal on the alternative bases of sovereign immunity and official immunity. Therefore, we decline to consider those questions. We affirm the trial court's judgment.

_____
Angela T. Quigless, Judge


Mary K. Hoff, P.J. and
Sherri B. Sullivan, J., concur.