# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 14-1993

———————————————

Edward C. Schoettle

*Plaintiff - Appellant*

v.

Jefferson County; Oliver Glenn Boyer, Sheriff, Jefferson County; Matthew
Hudson, Deputy; Aaron Piefer, Deputy

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: March 11, 2015
Filed: June 11, 2015

——————————

Before MURPHY and SHEPHERD, Circuit Judges, and BROOKS,[1] District
Judge.

——————————

BROOKS, District Judge.

_____

[1]The Honorable Timothy L. Brooks, United States District Judge for the
Western District of Arkansas, sitting by designation.

Edward C. Schoettle brought a civil rights lawsuit under 42 U.S.C. § 1983 against Jefferson County, Jefferson County Sheriff Oliver Glenn Boyer, and Deputies Matthew Hudson and Aaron Piefer, alleging inter alia that his constitutional rights were violated during his arrest on November 6, 2010. The district court[2] granted summary judgment for the defendants. Schoettle appeals, and we affirm.

## I. Background

Schoettle, an insulin-dependent diabetic, was driving his truck on the evening of November 6, 2010, when he began to feel lightheaded and experienced vision problems. He pulled over to the shoulder of the highway and parked. After eating candy and glucose tablets he either fell asleep or slipped into unconsciousness in the cab of his truck.

Hudson approached Schoettle's truck and observed Schoettle slumping or slouching to the side. Hudson did not notice any alcohol containers or weapons in the truck. After Hudson knocked on the window and attempted to identify himself, Schoettle mumbled that he was eating candy to recover from low blood sugar. Believing Schoettle to be intoxicated, Hudson walked back to his vehicle and radioed for assistance from a DWI enforcement officer.

When Peifer, a DWI enforcement officer with the Jefferson County Sheriff's Office, arrived at the scene, he also knocked on the window of Schoettle's truck. Schoettle woke up, asked Peifer who he was, and told him to "leave me the fuck alone." Peifer twice requested that Schoettle exit his vehicle, but Schoettle refused, telling Peifer, "I got no reason to get out, mother fucker, because I've done nothing

---

[2]The Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri, presiding by consent of the parties. 28 U.S.C. § 636(c).

wrong." When Peifer opened Schoettle's door to remove him from the truck, Schoettle withdrew into the passenger side to avoid Peifer and Hudson. Each officer grabbed one of Schoettle's legs and pulled him from the truck, causing him to hit the ground. At some point, Schoettle then broke free and attempted to move back toward the truck while one officer held his right arm.

Schoettle resisted being handcuffed, and the officers forced him to the ground on his stomach. While they attempted to pull his arms behind his back to handcuff him, Schoettle stated he did not want to put his hands behind his back because he had a gun in his waistband. Peifer removed the gun and threw it out of Schoettle's reach. Schoettle became more agitated because of concern that the gun could have discharged, and he asked the officers if they were stupid.

The officers made further attempts to handcuff Schoettle, who continued to resist and struggle. The officers pepper-sprayed Schoettle, but he continued to kick and punch at the officers from the ground. During the scuffle, the officers struck Schoettle about the head and body in an attempt to subdue him. After that, they were able to handcuff Schoettle and hold him until additional officers arrived on the scene.

Officer Scott Schumer then arrived on the scene and either called or directed another officer to call an ambulance. Schoettle continued to resist until the ambulance arrived, and EMS personnel noted that Schoettle was "very uncooperative" and would answer few questions. Schoettle was treated for a nosebleed and hypoglycemia, after which he became calm. Tests on his blood alcohol content were negative. It was later revealed that he had sustained a broken posterior rib.

Schoettle brought this lawsuit in the United States District Court for the Eastern District of Missouri, and alleged five counts in his amended complaint: (1) excessive use of force against Peifer and Hudson; (2) refusal of medical assistance

against Peifer and Hudson; (3) supervisory liability against Oliver "Glen" Boyer, the Sheriff of Jefferson County; (4) municipal liability for failure to instruct, supervise, control, and discipline against Jefferson County; and (5) state-law claims of assault and battery against Peifer and Hudson. The district court found that Peifer and Hudson were entitled to qualified immunity, and granted summary judgment for the defendants on all counts. Schoettle brought this appeal from the district court's grant of summary judgment.

## II. Legal Standard

We review the district court's order granting summary judgment de novo, viewing the evidence in the light most favorable to Schoettle and drawing all reasonable inferences in his favor.[3] Carpenter v. Gage, 686 F.3d 644, 648 (8th Cir. 2012). In claims brought under 42 U.S.C. § 1983, "qualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." Id. Schoettle must present sufficient evidence to create a genuine issue of fact as to whether the deputies violated a clearly established right in order to overcome their assertion of qualified immunity. Id.

## III. Discussion

Schoettle argues on appeal that the district court erred by granting summary judgment for the defendants on his excessive force, state-law, and supervisory and municipal liability claims. He contends that genuine issues of material fact existed for each of these claims.

## A. Excessive Force Claim

[3]The facts in the preceding section are recited in accordance with this standard.

We begin our analysis with Schoettle's excessive force claim. Regarding this claim, Schoettle maintains that genuine issues of material fact exist as to: (1) whether the officers had reasonable suspicion that Schoettle had been driving while intoxicated; (2) the levels of Schoettle's resistance and the officers' force; and (3) the officers' knowledge of Schoettle's medical condition.

## 1. Reasonable Suspicion

"A police officer may conduct a brief, investigatory stop of an individual if the officer reasonably suspects that the individual is involved in criminal activity." United States v. Lawhorn, 735 F.3d 817, 820 (8th Cir. 2013) (citing Terry v. Ohio, 392 U.S. 1 (1968)). "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Givens, 763 F.3d 987, 989 (8th Cir. 2014) (internal citations and quotations omitted). We look at the totality of the circumstances to determine whether reasonable suspicion existed, allowing officers to draw on their experience and training. Lawhorn, 735 F.3d at 820 (internal citations and quotations omitted).

When an officer observes a man passed out or asleep in the driver's seat of an automobile on the side of the road, and when the man responds to the officer's questions with alternatingly unintelligible or belligerent responses, it is reasonable for the officer to suspect that the man has been driving while intoxicated. Cf. United States v. Broadie, 452 F.3d 875, 879 (D.C. Cir. 2006); Ramirez v. City of Buena Park, 560 F.3d 1012, 1021 (9th Cir. 2009); United States v. Neemann, 61 F.Supp.2d 944, 953 (D. Neb. 1999). And when an officer is conducting an investigative traffic stop based upon reasonable suspicion, he may order a passenger to exit the vehicle. United States v. Phillips, 679 F.3d 995, 998 (8th Cir. 2012). That is exactly what happened here. See Section I, supra.

## 2. Levels of Resistance and Force

Satisfied that the officers had reasonable suspicion, we turn to the levels of resistance and force that were used during this encounter. Claims that law enforcement officers used excessive force during an arrest or investigatory stop are analyzed under the Fourth Amendment's prohibition of unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 394-95 (1989). When determining whether unreasonable force was used, courts must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. Courts should not allow "the 20/20 vision of hindsight" to cloud "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97. In other words, to comport with the Fourth Amendment, the force must have been objectively reasonable in light of the facts and circumstances confronting the officers at the time it was used. Id. at 397. Courts should not consider the officers' subjective motivations when determining whether their use of force was reasonable under the Fourth Amendment. Id. at 397-98.

Schoettle concedes that he refused to comply with the officers' orders, repeatedly attempted to evade arrest, and even physically struggled against the arresting officers. We have previously cognized the severity of the suspected crime at issue—driving while intoxicated—and the immediate threat that impaired drivers pose to the safety of officers and others. In Janis v. Biesheuvel, we held that officers were justified in using force to remove a driver, whom they believed to be impaired, from his vehicle after he refused to comply with their orders to exit it. 428 F.3d 795, 800 (8th Cir. 2005). We approvingly quoted a Seventh Circuit case's recognition of "the potential threat to public safety of an impaired driver in command of a running

vehicle." Id. (quoting Smith v. Ball State Univ., 295 F.3d 763, 770 (7th Cir. 2002)) (alterations omitted). Notably, the Seventh Circuit observed elsewhere in the same opinion that "Smith [a driver in diabetic shock] posed a threat to himself, the officers and the general public, even after Officer Foster turned off Smith's vehicle and attempted unsuccessfully to communicate with him." Smith, 295 F.3d at 769. Similarly, in Wertish v. Krueger, we held that when an impaired driver in diabetic shock "failed to comply with orders to get out of his vehicle, it was objectively reasonable for [the officer] to pull [the driver] from the truck and handcuff him." 433 F.3d 1062, 1066 (8th Cir. 2006) (internal citations omitted). In short, all three Graham factors weigh against Schoettle and in favor of the officers in this case.

### 3. Officers' Knowledge of Schoettle's Medical Condition

Schoettle argues that there is a material factual dispute with regard to whether or when the officers knew that Schoettle was experiencing a medical emergency. Schoettle reasons that if the officers learned early in the encounter that his erratic behavior was due to a medical emergency and not intoxication, then his subsequent arrest and the force used to effectuate it were unreasonable. Our prior cases supply some indirect support for this line of argument. Cf. Wertish, 433 F.3d at 1067 ("Wertish admits there was nothing visible to tell officer Krueger that he was dealing with a diabetic. Officer safety concerns made it objectively reasonable for Krueger and the Renville officers to assume they were dealing with a belligerent drunk—or perhaps a fleeing criminal—who required forcible detention."); Janis, 428 F.3d at 800 ("At the time they pulled Richards from the car, however, the officers did not know that Richards's actions were the result of a diabetic seizure, not intoxication.").

It is certainly true that an officer's knowledge of an arrestee's medical condition can be relevant to a determination of whether the officer employed excessive force. After all, Graham instructs us that we are to determine whether the level of force was objectively reasonable in light of the facts and circumstances

confronting the officers at time the force was used. 490 U.S. at 397. However, we are persuaded by the record before us that the level of force used by the officers against Schoettle was objectively reasonable, regardless of when they learned that he was experiencing a medical emergency. Our opinion in Carpenter v. Gage provides especially useful guidance for reaching this conclusion. 686 F.3d 644 (8th Cir. 2012).

In Carpenter, the plaintiff's wife called 911 when the plaintiff (Carpenter) suffered a stroke. 686 F.3d at 646-47. When a paramedic attempted to enter Carpenter's house, Carpenter chased him out of the house with a baseball bat. Id. Several deputy sheriffs then arrived at the house in response to a call that first responders had been threatened with a baseball bat. Id. at 647. At least one of the deputies was informed upon arrival that Carpenter might have suffered a stroke. Id. Both deputies were told that there was a rifle in the house. Id. The deputies entered the house and, after Carpenter refused to comply with their orders to stop moving around, they took him to the ground and tased him several times in order to restrain and arrest him. Id.

Carpenter sued the deputies, the sheriff, and the county, claiming, inter alia, that excessive force was used against him and that the deputies exhibited deliberate indifference to his medical needs. Id. at 647-48. We affirmed the district court's grant of summary judgment on all counts. See id. at 646. With regard to his excessive force claim, we observed "that Carpenter refused to offer his hands when ordered to do so, . . . that he was warned about the use of the taser," and that "[e]ven if Carpenter's motive was innocent, the deputies on the scene reasonably could have interpreted Carpenter's actions as resistance and responded with an amount of force that was reasonable to effect the arrest." Id. at 650. Later in the opinion, when analyzing Carter's deliberate indifference claim,[4] we noted that "[b]efore the deputies

_____

[4]We analyzed Carpenter's deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment and under the Eighth Amendment, because the

-8-

could consider responding to Carpenter's medical needs, they had to subdue him and secure the premises." Id.

Returning to the instant facts, the record indisputably shows that even if the officers became aware at some point during their interaction with Schoettle that he was suffering a hypoglycemic episode, they were still confronted with a belligerent and impaired man who was refusing to comply with their orders to exit the vehicle and who was physically resisting their attempts to remove him from it. If the officers realized at some point that Schoettle's impairment was not attributable to any fault of his own, that knowledge would not have made Schoettle any less dangerous to himself and others while he was impaired. Given these facts, it is difficult to conceive how Schoettle could have received appropriate medical care without first being physically subdued. Indeed, as noted above, even after he was arrested Schoettle continued to resist until the ambulance arrived and was uncooperative with EMS personnel. The district court properly determined that the officers are entitled to qualified immunity and summary judgment on Schoettle's excessive force claim.

## B. Assault and Battery Claims

The district court also granted the officers summary judgment on Schoettle's Missouri-law assault and battery claims. Under Missouri law, a law enforcement officer "is answerable in damages as for assault and battery only when in the performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment." Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987) (quoting State v. Hines, 128 S.W. 248, 248-49 (Mo. Ct. App. 1910)). As

_____

deliberate indifference was alleged to have occurred after Carpenter's arrest. 646 F.3d at 650. Schoettle's excessive force claim is properly brought under the Fourth Amendment as it concerns pre-arrest conduct, and is therefore governed by the Graham standard enunciated supra.

discussed in Section III.A. supra, the district court correctly determined that the officers did not use more force against Schoettle than was reasonably necessary.

## C. Supervisory and Municipal Liability Claims

Finally, the district court granted summary judgment to the county and the sheriff on Schoettle's section 1983 supervisory and municipal liability claims. This, too, was proper. We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim. See Moore v. City of Desloge, Mo., 647 F.3d 841, 849 (8th Cir. 2011). "Because [Schoettle] failed to establish [the officers] violated [Schoettle]'s constitutional rights, [Schoettle] cannot maintain this action against either [the sheriff] or the [county]." Id.

## IV. Conclusion

The judgment of the district court is affirmed.

_____