# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1183

_____

Kimberly Boude

*Plaintiff - Appellant*

v.

City of Raymore, Missouri; Joseph German, Police Officer; Raymore Missouri
Police Department

*Defendant*s

Michael W. Heady, Police Officer

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: December 14, 2016
Filed: May 5, 2017

_____

Before WOLLMAN, SMITH,[1] and BENTON, Circuit Judges.

_____

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States
Court of Appeals for the Eighth Circuit on March 11, 2017.

BENTON, Circuit Judge.

Kimberly K. Boude sued Officer Michael W. Heady of the Raymore, Missouri, Police Department for excessive use of force under 42 U.S.C. § 1983, as well as common law negligence and battery. The district court[2] granted summary judgment to Heady based on qualified and official immunity. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Boude was addicted to huffing aerosol spray cans, which intoxicated her. On March 17, 2012, Raymore Police Officer Joseph German was dispatched to "check on a person in their vehicle" in the parking lot of a Sonic restaurant. Arriving, German found Boude behind the wheel of her vehicle, an SUV. Seeing she was "not completely coherent," he summoned medical assistance.

The next day, Boude huffed two times and then drove to the Sonic restaurant. On patrol, German and Heady heard a radio dispatch about a motorist potentially in need of assistance. The dispatcher's description matched Boude's SUV from the previous day. Heady knew about German's encounter with Boude the day before, and began to search for the car. Within minutes, he saw a SUV matching the description. Stepping out of his patrol car, Heady motioned and told Boude to stop her SUV. Boude stopped. Heady approached the open driver-side window. German arrived within one minute of the stop. His dash camera recorded the events.

Heady asked Boude how much she huffed that day. She said "not much." Heady told her to turn the car off. Boude reached for the gearshift of the SUV. As she reached, the car's brake lights turned on. Heady said "no, no, no," reached

[2]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

through the front window, turned off the ignition, and took the keys. Heady told Boude to step out of the car. She failed to comply. Heady physically removed her, placed her on the ground, and handcuffed her. Boude later pled guilty to driving while intoxicated, a misdemeanor. She claims injures from the arrest, requiring spinal surgery and physical therapy.

Boude sued Heady for excessive force under 42 U.S.C. § 1983. She also alleged common law negligence and battery. The district court granted summary judgment to Heady based on qualified and official immunity. Boude appeals.

II.

This court reviews de novo a grant of qualified immunity. *See Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). While this court views the facts most favorably to Boude, it need not adopt her factual allegations where a video "blatantly contradict[s]" her version of events. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Qualified immunity is a basis to dismiss a claim against a public employee if the alleged conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007) (quotation omitted). The qualified immunity analysis considers two questions: First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *See Harris*, 550 U.S. at 377 (quotation omitted). Second, whether the right at issue was "clearly established in light of the specific context of the case." *See id.* (quotation omitted). Courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Boude contends that Heady violated her Fourth Amendment "right to be free from excessive force in the context of an arrest." *See* **Shannon v. Koehler**, 616 F.3d 855, 859 (8th Cir. 2010) (citation omitted). Under the Fourth Amendment, police officers are liable for excessive force that is not objectively reasonable under the circumstances. *See* **Brown v. City of Golden Valley**, 574 F.3d 491, 496 (8th Cir. 2009). Officers are "justified in using force to remove a driver, whom they believed to be impaired, from his vehicle after he refused to comply with their order to exit it." **Schoettle v. Jefferson Cty.**, 788 F.3d 855, 860 (8th Cir. 2015). *Accord* **Wertish v. Krueger**, 433 F.3d 1062, 1066 (8th Cir. 2006) (holding that when a driver failed to comply with an officer's orders to get out of the vehicle, it was objectively reasonable for the officer to pull the driver from the truck and handcuff him).

Here, it was objectively reasonable for Heady to believe that Boude's reach for the gearshift was an attempt to shift the car to drive and to flee. Heady knew about Boude's huffing the day before, so he had reason to believe she was intoxicated and a potential threat to public safety. *See* **Schoettle**, 788 F.3d at 860 (citation omitted) (noting the "potential threat to public safety" when an impaired driver is in command of a vehicle). When the brake lights to the SUV turned on—consistent with shifting gears—Heady said "no, no, no," reached into the car, and turned off the ignition. After Boude refused to comply with Heady's order to exit, he was "justified in using force to remove [Boude], whom [Heady] believed to be impaired." *See* **id.**

True, as the district court found, the dash-cam video does not "blatantly contradict" Boude's allegation that she "reached for the gear shift to make sure her vehicle was in park before she made any move to comply with Defendant's order that she turn the vehicle off." *See* **Harris**, 550 U.S. at 380. However, qualified immunity does not depend on whether Boude was *in fact* attempting to flee when she reached for the gearshift; rather, the key is Heady's *objectively reasonable beliefs* under the circumstances. *See, e.g.*, **Brown**, 584 F.3d at 496. *See also* **Graham v. Connor**, 490 U.S. 386, 396-97 (1989) (explaining objective reasonableness considers that "police

-4-

officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). Here, assuming Boude's reach for the gearshift was innocent, Heady could still have an objectively reasonable belief that her movement was a non-compliant attempt to shift the car to drive and to flee. *See Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) ("Even if Carpenter's motive was innocent, the deputies on the scene reasonably could have interpreted Carpenter's actions as resistance and responded with an amount of force that was reasonable to effect the arrest.").

Boude contends that Heady's use of force was objectively unreasonable because when he removed her from the SUV, he had already taken the keys, eliminating any risk she might flee. Even after the car was off, it was reasonable for Heady to believe that Boude—intoxicated, and moments earlier non-compliant with his order to turn off the car—would continue to be non-compliant or attempt to flee on foot. *See Schoettle*, 788 F.3d at 860 (explaining that a driver "posed a threat to himself, the officers and the general public, even after [the officer] turned off [defendant's] vehicle"). Officers are "justified in using force to remove a driver, whom they believed to be impaired, from his vehicle *after* he refused to comply with their order to exit." *Id.* (emphasis added). Moments "after [Boude] refused to comply" with Heady's order to turn off the car, he was "justified in using force to remove" her. *See id.*

Boude relies on *Brown*, where this court found a fact dispute whether an officer held an objectively reasonable belief that force was necessary under the circumstances. *Brown*, 574 F.3d at 496. There, the suspect's husband had been pulled over for allegedly driving under the influence. *Id.* at 492. After he was handcuffed, the suspect—in the front passenger seat—became frightened and dialed 911. *Id.* An officer told her to hang up. She refused. The officer then entered the car and tased her. *Id.* Reversing a grant of qualified immunity, this court said,

"Whether [the officer] reasonably interpreted her refusal as a realistic threat to his personal safety or whether it constituted nothing more than an affront to his command authority is a matter for a jury to decide." *Id.* at 497.

The facts here differ from *Brown* in two critical ways. First, the suspect in *Brown* was in the passenger seat; Boude was in the driver seat. *See Schoettle*, 788 F.3d at 860 (citation omitted) (explaining there is a "potential threat to public safety [when] an impaired *driver* [is] in command" of a car (emphasis added)). Second, the suspect in *Brown* did not make any movement that could be reasonably interpreted as an attempt to flee. *See Brown*, 574 F.3d at 497 (finding that the suspect was "not actively resisting arrest or attempting to flee"). Here, it was objectively reasonable for Heady to believe that, when Boude—a suspected intoxicated driver—reached for the gearshift after he told her to exit the SUV, she was attempting to flee.

Because Heady's use of force was objectively reasonable under the circumstances, he did not violate Boude's Fourth Amendment right to be free from excessive force. *See id.* at 496. This court need not address the "clearly established" prong of the qualified immunity analysis. *See Harris*, 550 U.S. at 377. Heady is entitled to qualified immunity and summary judgment on the excessive-use-of-force claim.

III.

Heady invoked official immunity on Boude's negligence and battery claims. This court reviews de novo a grant of summary judgment based on official immunity. *See Murray v. Leyshock*, 915 F.2d 1196, 1199 (8th Cir. 1990). Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). "[A] police officer has the benefit of official immunity." *Fonseca v. Collins*, 884 S.W.2d 63, 66

(Mo. App. 1994). Discretionary acts require "the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* (citation omitted). The decision to arrest someone is a discretionary act. *Blue v. Harrah's N. Kansas City*, 170 S.W.3d 466, 479 (Mo. App. 2005). An "officer's decision to use force in the performance of his duties is discretionary." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (applying Missouri law).

Boude argues that Heady forfeits his official immunity because he acted in bad faith. Official immunity is lost if the official "acted in bad faith or with malice, which ordinarily requires actual intent to cause injury." *Austell v. Sprenger*, 690 F.3d 929, 938 (8th Cir. 2012) (quotation omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986) (quotation omitted). Bad faith means "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud." *Id.* (quotation omitted).

Boude believes that her bad faith allegation survives summary judgment because "[w]hether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by the jury." *See Brown*, 574 F.3d at 496. *Brown* applied Minnesota law. In Missouri, a bad-faith allegation survives summary judgment if a plaintiff states "facts from which it could reasonably be inferred that [defendant] acted in bad faith or from an improper or wrongful motive." *See Adolf*, 706 S.W.2d at 447-48. Boude's conclusory allegations that Heady acted in bad faith are insufficient to defeat summary judgment. *See Quinn v. St. Louis Cty.*, 653 F.3d 745, 752 (8th Cir. 2011) (finding conclusory statements insufficient to establish a

material question of fact).  Heady is entitled to official immunity on Boude's negligence and battery claims.

* * * * * * *

The judgment is affirmed.

_____