In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 KRISTINE HENDRIX, ) No. ED108858
 )
 Appellant, ) Appeal from the Circuit Court of
 ) the City of St. Louis
 vs. )
 ) Honorable Michael F. Stelzer
 CITY OF ST. LOUIS, ET AL., )
 )
 Respondent. ) Filed: November 9, 2021

 I. Introduction

 Kristine Hendrix appeals the Twenty-Second Judicial Circuit Court’s judgment, alleging

that the circuit court erred in denying her “Motion to Recuse” and in granting summary judgment

in favor of the City of St. Louis (“City”) on Count V of her petition, alleging negligent training

and supervision in connection with her excessive force/battery claim against City Police Officers

Stephen Ogunjobi and Louis Wilson. Officer Ogunjobi cross-appeals the circuit court’s denial of

his motions for directed verdict on Ms. Hendrix’s excessive force/battery claim. Officer Wilson

cross-appeals the circuit court’s denial of his request for attorney’s fees.1

 We affirm.

1
 Collectively, the City, Officer Ogunjobi, and Officer Wilson will be referred to as “Respondents,” even though
Officers Ogunjobi and Wilson have filed cross-appeals.
 II. Factual and Procedural Background2

 On the evening of May 29, 2015, Hendrix and approximately thirty to fifty others

gathered in downtown St. Louis to protest police brutality and systemic racism. The protest

began with Ms. Hendrix and others silently handing literature to passersby. The protestors later

marched from Keiner Plaza to nearby Busch Stadium, where a St. Louis Cardinals baseball game

was in progress. They marched near the stadium for approximately two hours and continued to

hand out literature. During this time, no protestors were arrested for impeding traffic. Later that

evening, video footage from the City Police Department’s Real Time Crime Center shows Ms.

Hendrix and other protestors walking in front of numerous vehicles attempting to drive on the

streets around Busch Stadium, which were open to vehicular traffic. Ms. Hendrix walked in

front of traffic on 8th Street, near its intersection with Clark Avenue.

 After the Cardinals game ended, Ms. Hendrix and approximately eleven or twelve other

protestors reassembled on Washington Avenue, where there was significant postgame traffic.

This group walked into the intersection of Washington Avenue and Tucker Boulevard, against a

red traffic signal. The group then marched down Washington Avenue, arriving at its intersection

with 11th Street, at which point officers from the St. Louis Metropolitan Police Department

began arresting protestors for impeding the flow of traffic. While one protestor was being

arrested, the group surrounded the protestor and the arresting officer (“the Lieutenant”), who put

out an “officer in need of aid” call on his radio. The Lieutenant then approached Ms. Hendrix

and reached for her arm, but she pulled both of her arms away and stepped backwards. The

Lieutenant then turned his attention to another protestor and began to arrest him instead, while he

2
 Many of the following facts were found by the circuit court in a Rule 74.04(d) order filed after it granted the
officers’ summary judgment order in part. “Once a circuit court enters an order deeming certain facts established for
all purposes under Rule 74.04(d), that order is preclusive as to those facts.” Empire Dist. Elec. Co. v. Scorse as Tr.
Under Tr. Agreement Dated November 17, 1976, 620 S.W.3d 216, 225 (Mo. banc 2021).

 2
was on the sidewalk. This protestor handed Ms. Hendrix a cell phone, which was being used to

film the incident. Ms. Hendrix continued recording with the phone.

 While filming, another officer on a bicycle approached Ms. Hendrix and other protesters,

ordering them to “get back.” Ms. Hendrix and another protestor were on the sidewalk at the

time. She and the other protestor complied with the officer’s order before they began to walk

away. In the meantime, the Lieutenant ordered the arriving officers who had responded to his

“officer in need of aid” call to “[g]rab anybody,” because they were “all in the street.” Officer

Ogunjobi arrived at the scene and observed bicycle officers near several people, including Ms.

Hendrix, and understood that these were the individuals impeding traffic. Officers Wilson and

Ogunjobi approached Ms. Hendrix from behind as she walked away while continuing to record

with the phone in her right hand. Officer Wilson testified that Ms. Hendrix did not comply with

his order informing her that she was under arrest, but Ms. Hendrix testified that she did not hear

any order that she was under arrest. Ms. Hendrix eventually began to turn towards Officer

Wilson. Officer Ogunjobi then deployed his taser for the full, five-second cycle. The probes

struck Ms. Hendrix in her hand and right breast. After the first cycle, Ms. Hendrix fell to the

ground, with her torso on top of her arms and the phone. Officer Wilson testified that he also felt

a shock from the taser as he was grabbing Ms. Hendrix when Officer Ogunjobi tased her.

Although Ms. Hendrix’s body obstructed the video recording, the phone continued to record

audio of the incident.

 While Ms. Hendrix was on the ground, an officer can be heard ordering her to put her

hands behind her back. But before that officer even finishes his sentence, Officer Ogunjobi tased

Ms. Hendrix a second time, again for the full, five-second cycle. Ms. Hendrix can be heard

saying, “I can’t[,] it hurts!” five times before saying, “It hurts so bad, please, please stop.”

 3
Officer Ogunjobi then tased Ms. Hendrix for a third time in less than a minute, again

administering the full, five-second cycle. Ms. Hendrix then cried out, “Oh my God, why are you

doing this[?] I’m on the ground.” After the third cycle, Officer Wilson managed to cuff Ms.

Hendrix. Ms. Hendrix testified that she continued to feel pain from having been tased.

 Ms. Hendrix filed suit on May 26, 2017, demanding a jury trial. She brought claims for

excessive force/battery (Count I) and assault (Count II) against Officers Ogunjobi and Wilson;

claims for false arrest/false imprisonment (Count III) and malicious prosecution (Count IV)

against Officers Ogunjobi, Wilson, and the Lieutenant; and a claim for negligent training and

supervision against the City (Count V).

 On August 15, 2018, the City filed a motion for summary judgment on Count V, the

negligent training and supervision claim, asserting its sovereign immunity as a defense. Ms.

Hendrix responded by arguing that the City waived its sovereign immunity under § 537.610,3 by

purchasing liability insurance or adopting a self-insurance scheme through the Public Facilities

Protection Corporation (“PFPC”), which the City denied. On June 9, 2019, Ms. Hendrix moved

to supplement the record with newly discovered evidence showing that the PFPC and the

Twenty-Second Judicial Circuit had entered into cooperation agreements with one another. The

circuit court heard and took the motion for summary judgment on Count V under advisement on

June 19, 2019. On July 11, 2019, Ms. Hendrix then filed a “Motion to Recuse the Twenty-

Second Judicial Circuit Court” pursuant to Rule 51.05 and § 508.090, requesting that the entire

circuit “recuse itself from further consideration of [the City]’s Partial Motion for Summary

Judgment.” On November 20, 2019, the circuit court granted summary judgment in favor of the

City on Count V, without ruling on Ms. Hendrix’s “Motion to Recuse.”

3
 All statutory references are to Mo. Rev. Stat. 2016 unless otherwise indicated.

 4
 Officer Ogunjobi, Officer Wilson, and the Lieutenant moved for summary judgment on

Counts I–IV. On Counts I and II, Officers Ogunjobi and Wilson argued that they were entitled

to official immunity because their use of force was a discretionary act. On Count III, Officer

Ogunjobi, Officer Wilson, and the Lieutenant argued that they arrested Ms. Hendrix following a

lawful order, and therefore her claim for false arrest/false imprisonment could not survive.

Finally, on Count IV, Officer Ogunjobi, Officer Wilson, and the Lieutenant argued that Hendrix

could not adduce evidence sufficient to allow the trier of fact to find the existence of the

elements necessary for a malicious prosecution claim. On December 17, 2019, the circuit court

granted summary judgment on behalf of all three officers on the false arrest/false imprisonment

and malicious prosecution claims, but allowed the excessive force/battery and assault claims

against Officers Ogunjobi and Wilson to proceed to trial.

 A jury trial took place on the remaining claims from February 18–20, 2020. The jury

found in favor of Ms. Hendrix on her excessive force/battery claim against Officer Ogunjobi and

awarded her actual damages. However, the jury found in favor of Officer Ogunjobi on the

assault claim and in favor of Officer Wilson on both claims. Following trial, Officer Ogunjobi

moved for a judgment notwithstanding the verdict on March 19, 2020, and Officer Wilson

moved for an award of attorney’s fees, costs, and reasonable expenses on March 23, 2020. Ms.

Hendrix moved for additur and a new trial on May 4, 2020. The circuit court denied Officer

Ogunjobi’s and Ms. Hendrix’s motions, but granted Officer Wilson’s motion in part, awarding

costs but not attorney’s fees.

 These appeals follow.

 5
 III. Discussion

 A. Rule 84.04

 We first note that the parties’ briefs run afoul of Rule 84.04 on multiple occasions. Rule

84.04 contains simple-to-follow procedural instructions for parties filing appeals in Missouri.

 Rule 84.04 is not merely designed to enforce hypertechnical procedures or to
 burden the parties on appeal; rather, “[c]ompliance with the briefing requirements
 is required, not only so the appellant may give notice of the precise matters at
 issue, but also so that unnecessary burdens are not imposed on the appellate court
 and to ensure that appellate courts do not become advocates for the appellant.”

Hoock v. SLB Acquisition, LLC, 620 S.W.3d 292, 303 (Mo. App. E.D. 2021) (quoting Blanks v.

Fluor Corp., 450 S.W.3d 308, 324 n.1 (Mo. App. E.D. 2014)). Compliance with Rule 84.04 is

mandatory. Bennett v. Taylor, 615 S.W.3d 96, 98 (Mo. App. E.D. 2020).

 First, Rule 84.04(a)(1) requires that a brief contain “[a] detailed table of contents, with

page references, and a table of cases (alphabetically arranged), statutes, and other authorities

cited, with reference to the pages of the brief where they are cited.” The table of contents in Ms.

Hendrix’s brief lists inaccurate page numbers. An inaccurate table of contents does not comply

with Rule 84.04. See Waller v. A.C. Cleaners Mgmt., Inc., 371 S.W.3d 6, 9 (Mo. App. E.D.

2012).

 Rule 84.04(c) obliges the parties to include “a fair and concise statement of the facts

relevant to the questions presented for determination without argument.” Nevertheless, Ms.

Hendrix argues in her statement of facts that “[t]he order granting summary judgment ignores the

majority of [her] supplemental facts and supporting exhibits and fails to set out how there is no

genuine dispute of material fact, given those facts and exhibits.” This does not comply with Rule

84.04(c). Hoock, LLC, 620 S.W.3d at 304. Respondents’ brief also violates Rule 84.04(c). “A

brief does not substantially comply with Rule 84.04(c) when it highlights facts that favor [that

 6
party] and omits facts supporting the judgment.” Prather v. City of Carl Junction, Mo., 345

S.W.3d 261, 263 (Mo. App. S.D. 2011); accord Ordinola v. Univ. Physician Associates, 625

S.W.3d 445, 453 (Mo. banc 2021). “Aside from violating Rule 84.04(c), failure to acknowledge

adverse evidence is simply not good appellate advocacy. Indeed, it is often viewed as an

admission that if the Court was familiar with all of the facts, [that party] would surely lose.”

Prather, 345 S.W.3d at 263 (quoting Evans v. Groves Iron Works, 982 S.W.2d 760, 762 (Mo.

App. E.D. 1998)).

 Rule 84.04(d) governs the “Points Relied On” in an appellant’s brief and gives appellants

a simple template to follow when creating their points:

 The point shall be in substantially the following form: “The trial court erred in
 [identify the challenged ruling or action], because [state the legal reasons for the
 claim of reversible error], in that [explain why the legal reasons, in the context of
 the case, support the claim of reversible error].”

(Emphases in original). The Points Relied On alert the opposing parties of all matters in dispute

and inform the Court of the issues we must review. McGuire v. Edwards, 571 S.W.3d 661, 667

(Mo. App. E.D. 2019), reh’g denied (Apr. 29, 2019).

 Rule 84.04(e) then outlines the specific requirements that parties must follow in the

argument portion of their briefs:

 The argument shall substantially follow the order of “Points Relied On.” The
 point relied on shall be restated at the beginning of the section of the argument
 discussing that point. The argument shall be limited to those errors included in
 the “Points Relied On.” For each claim of error, the argument shall also include a
 concise statement describing whether the error was preserved for appellate
 review; if so, how it was preserved; and the applicable standard of review.

However, Ms. Hendrix does not restate her Points Relied On at the beginning of the argument

section of her brief. Ms. Hendrix and Respondents have also violated Rule 84.04(e) by failing to

inform the Court whether the claims of error have been preserved for review. “It is not this

 7
court’s duty to supplement a deficient brief with its own research, to comb the record in search of

facts to support an appellant’s claim of error, or demonstrate it is properly preserved for appellate

review.” Porter v. Santander Consumer USA, Inc., 590 S.W.3d 356, 358 (Mo. App. E.D. 2019),

transfer denied (Dec. 24, 2019). Finally, “[a]ll factual assertions in the argument shall have

specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript,

or exhibits.” Rule 84.04(e). Respondents’ brief does not include citations on all factual

assertions, in violation of Rule 84.04(e).

 Despite the errors in the parties’ briefs, we exercise our discretion to gratuitously review

these appeals. Although failure to substantially comply with Rule 84.04 preserves nothing for

appellate review and is grounds to dismiss an appeal, we prefer to decide cases on the merits and

will do so when the violations do not hamper or impede our ability to review the case. Bennett,

615 S.W.3d at 98.

 B. Ms. Hendrix’s “Motion to Recuse” the entire Twenty-Second Judicial Circuit

 Ms. Hendrix argues in Point III that the circuit court erred in refusing to rule on her

“Motion to Recuse,” in which she requested that the entire Twenty-Second Judicial Circuit

recuse itself only from deciding the City’s motion for partial summary judgment. The circuit

court noted in its Order on February 14, 2020, that “the Motion to Recuse was not filed until

after the Summary Judgment Motion was under submission and is therefore untimely despite the

fact that it was raised approximately halfway through defense counsel’s argument at the

Summary Judgment hearing.”

 1. Standard of Review

 It is presumed that a judge acts with honesty and integrity and will not preside over a

hearing in which the judge cannot be impartial. Anderson v. State, 402 S.W.3d 86, 92 (Mo. banc

 8
2013). We consider the entire record when evaluating facts in support of a request for

disqualification. Id. Generally, we review the denial of a motion for change of judge for an

abuse of discretion; however, “in cases in which a [circuit] court may not have considered certain

facts relevant to disqualification, an appellate court should determine whether those facts are

sufficient to require recusal or, at a minimum, a hearing on the record.” Id.

 2. Analysis

 In Ms. Hendrix’s “Motion to Recuse,” she sought a change of judge for cause solely for

the City’s summary judgment motion. The circuit court originally did not rule on the motion,

thus denying it by operation of law. Later, the circuit court noted in its order on February 14,

2020, that “the Motion to Recuse was not filed until after the Summary Judgment Motion was

under submission … despite the fact that it was raised approximately halfway through defense

counsel’s argument at the Summary Judgment hearing.”

 Under both Rule 51.05 and § 508.090, a party may move to change or disqualify a judge

for cause at any time. Rule 51.05(d) states that “no party shall be precluded from later

requesting any change of judge for cause.” See also Robin Farms, Inc. v. Bartholome, 989

S.W.2d 238, 245 (Mo. App. W.D. 1999) (“Although Rule 51.05 provides time limits for filing an

application for a peremptory disqualification of a judge, as to an application for disqualification

for cause, pursuant to Rule 51.05(d), such as the one filed in this case, these time limits do not

apply.”). Furthermore, § 508.130 does not limit a party’s time in which it can file a motion to

disqualify a judge under § 508.090. State ex rel. Ferguson v. Corrigan, 959 S.W.2d 113, 115

(Mo. banc 1997).

 Nevertheless, “[a] party may waive the right to disqualify a judge if it is clear from the

record that … the cause [has been] taken under submission.” State ex rel. Bates v. Rea, 922

 9
S.W.2d 430, 431 (Mo. App. S.D. 1996); accord Ferguson, 959 S.W.2d at 115 (noting that

“[u]ndue delay will permit the [§ 598.090] claim to be treated as waived”). In State ex rel.

Johnson v. Mehan, 731 S.W.2d 887 (Mo. App. E.D. 1987), this Court issued a writ prohibiting a

disqualified judge from ruling on matters not already under submission. Although the judge had

been disqualified for cause, the Court noted that “a trial judge may retain the authority to rule on

matters taken under submission and not ruled upon before the disqualification.” Id. at 888. Ms.

Hendrix learned of the cooperation agreements between the PFPC and the Twenty-Second

Judicial Circuit no later than May 8, 2019, as she stated in the motion to supplement the record

with newly discovered evidence filed on June 9, 2019. Yet she did not file a motion to disqualify

the entire circuit until July 11, 2019—well after the court took the City’s motion for summary

judgment under advisement on June 19, 2019. Importantly, Ms. Hendrix was apparently fine

with the Twenty-Second Judicial Circuit presiding over the rest of the proceedings, as she sought

to disqualify the Twenty-Second Judicial Circuit only from ruling on the City’s motion for

summary judgment. Thus, Ms. Hendrix has waived any arguments seeking disqualification for

cause by delaying the filing of her “Motion to Recuse” on a single issue until after the court took

that issue under submission.

 Ms. Hendrix’s Point III is denied.

 C. The City’s Motion for Summary Judgment on Count V

 In Points I and II, Ms. Hendrix contends that the circuit court erred in granting the City’s

motion for summary judgment on Count V. First, she argues that the circuit court misapplied the

summary judgment standard in the City’s favor on Count V because the record shows genuine

issues of material fact. Second, she argues that the circuit court erred because the City waived

sovereign immunity by duly adopting self-insurance or liability insurance through the PFPC.

 10
 1. Standard of Review

 Summary judgment is a legal issue that we review de novo. ITT Commercial Fin. Corp.

v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). “Summary judgment

is only proper if the moving party establishes that there is no genuine issue as to the material

facts and that the movant is entitled to judgment as a matter of law.” Green v. Fotoohighiam,

606 S.W.3d 113, 115 (Mo. banc 2020), reh’g denied (Sept. 29, 2020) (quoting Goerlitz v. City of

Maryville, 333 S.W.3d 450, 452 (Mo. banc 2011)).

 The record below is reviewed in the light most favorable to the party against
 whom summary judgment was entered, and that party is entitled to the benefit of
 all reasonable inferences from the record. However, facts contained in affidavits
 or otherwise in support of the party’s motion are accepted as true unless
 contradicted by the non-moving party’s response to the summary judgment
 motion.

Id. at 116 (quoting Goerlitz, 333 S.W.3d at 453). Rule 74.04(c)(2) and (c)(4) requires the non-

moving party to “support denials with specific references to discovery, exhibits, or affidavits

demonstrating a genuine factual issue for trial.” Id. (quoting Cent. Trust & Inv. Co. v.

Signalpoint Asset Mgmt., LLC, 422 S.W.3d 312, 320 (Mo. banc 2014)). Facts without proper

support are considered admitted. Id.

 A defending party may establish a prima facie case for summary judgment by showing:

 (1) facts negating any one of the elements of the non-movant’s claim; (2) that the
 non-movant, after an adequate period for discovery, has not been able and will
 not be able to produce sufficient evidence to allow the trier of fact to find the
 existence of any one of the elements of the non-movant’s claim; or (3) that there
 is no genuine dispute as to the existence of the facts necessary to support
 movant’s properly pleaded affirmative defense.

Goerlitz, 333 S.W. at 453 (internal quotations omitted). When a party makes a prima facie

showing that no genuine issues of material fact exist, the non-movant must then show—through

affidavits, depositions, answers to interrogatories, or admissions on file—that there actually is a

 11
genuine issue of material fact. U.S. Bank, N.A. as Tr. of Living Tr. Agreement of Lorenz K.

Ayers, Dated May 3, 1967 v. Molk, 618 S.W.3d 652, 659 (Mo. App. E.D. 2021), transfer denied

(Apr. 6, 2021).

 Finally, “[s]overeign immunity is the rule, not the exception.” Metro. St. Louis Sewer

Dist. v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 914 (Mo. banc 2016). Whether

sovereign immunity applies is a question of law. Crouch v. City of Kansas City, 444 S.W.3d

517, 522 (Mo. App. W.D. 2014). And whether sovereign immunity has been waived through a

self-insurance or liability insurance plan is a question of law that the circuit court does not need

to accept as true. Hendricks v. Curators of Univ. of Missouri, 308 S.W.3d 740, 747 (Mo. App.

W.D. 2010).

 2. Analysis

 “[S]overeign immunity is a tort protection for government entities.” Southers v. City of

Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008), as modified on denial of reh’g (Sept. 30,

2008). Formerly a common law rule, sovereign immunity has been codified in Missouri law in

§§ 537.600–.650. Id. at 609. Municipalities also receive sovereign immunity protection while

engaged in the exercise of governmental functions. §§ 71.185, 537.610; Southers, 263 S.W.3d at

609. In some cases—such as when an injury results from the negligent acts or omissions of a

public employee’s operation of a motor vehicle, or when an injury results from dangerous

conditions on public property—public entities do not receive sovereign immunity protection.

§ 537.600.1; Southers, 263 S.W.3d at 609.

 Section 537.610 allows an entity protected by sovereign immunity to waive that

immunity by either purchasing insurance or by adopting a self-insurance plan for those claims.

A.F. v. Hazelwood Sch. Dist., 491 S.W.3d 628, 635 (Mo. App. E.D. 2016). “We will construe

 12
any such waiver narrowly; that is, the extent of the waiver is ‘expressly dictated, and limited, by

the terms of the insurance policy.’” Id. (quoting Topps v. City of Country Club Hills, 272

S.W.3d 409, 415 (Mo. App. E.D. 2008)). “The plaintiff shoulders the burden of proving the

existence of an insurance policy and that the terms of the policy cover the plaintiff’s claim.” Id.

(citing Topps, 272 S.W.3d at 415; Brennan By & Through Brennan v. Curators of the Univ. of

Missouri, 942 S.W.2d 432, 436–37 (Mo. App. W.D. 1997)).

 Along with its motion for summary judgment, the City attached an affidavit from Deputy

City Counselor Nancy Kistler stating that the “City has not purchased any liability insurance

policy to cover torts, personal injuries, or any other claims that do not arise from dangerous

property conditions or the operation of motor vehicles,” and “[t]o the extent City may be held

liable under law for torts or personal injuries arising from dangerous property conditions or the

operation of motor vehicles, City is self-insured.” The City also included an affidavit from

Dionne Flowers, the Register for the City, in which Ms. Flowers attests that “the Office of the

Register has no record of any contract entered between the City, the PFPC[,] or any insurance

provider that purports to provide liability coverage for tort claims asserted against the City or its

employees,” and that there exists:

 [N]o record of any City ordinance duly enacted by the City’s Board of
 Alderm[e]n that purports to adopt a plan of self-insurance providing liability
 coverage for the City for tort claims other than those arising from motor vehicle
 accidents with vehicles operated by City employees and claims arising from the
 dangerous condition of public property.

In response, Ms. Hendrix attached the PFPC’s articles of incorporation, its bylaws, a document

entitled “City of St. Louis Risk Management Program,” a screenshot from the City’s website

referring to the PFPC as “the city’s self-insurance program,” and a letter from City Counselor

 13
Julian Bush to a City Alderwoman, stating that the PFPC’s purpose is to “insure the City against

all claims” and that it can “be properly thought to be self-insurance.”

 Ms. Hendrix simply has not produced any evidence to overcome the City’s evidence

supporting summary judgment, as she is required to do. In support of its motion, the City

submitted an affidavit stating that it does not have self-insurance or liability insurance for

negligent supervision and training claims. Ms. Hendrix has not provided any evidence in

response showing that the City does have insurance covering her specific claim. Neither a letter

from the City Counselor, nor the screenshot, constitute admissible evidence of self-insurance or

liability insurance for negligent supervision and training claims. The City Counselor is not the

governing body of St. Louis and the letter is not evidence that a self-insurance plan was duly

adopted by the City’s governing body—it merely reflects the City Counselor’s opinion. See,

e.g., Green v. City of St. Louis, 4:19 CV 1711 DDN, 2020 WL 7056015, at *8 (E.D. Mo. Dec. 2,

2020) (observing that the City Counselor’s letter to the Alderwoman “is not a document that

established a self-insurance plan involving the PFPC” in denying a motion to dismiss under

federal pleading standards). Furthermore, the PFPC’s articles of incorporation, its bylaws, and

the “City of St. Louis Risk Management Program” letter also fail to show that the City either has

liability insurance or is self-insured for negligent supervision and training claims, even when all

inferences resulting from these documents are granted in favor of Ms. Hendrix. Accordingly, the

circuit court did not err in concluding that the City has not waived its sovereign immunity, which

was a question of law that the circuit court need not accept as true. Hendricks, 308 S.W.3d at

747.

 Ms. Hendrix’s Points I and II are denied.

 14
 D. Officer Ogunjobi’s Motions for Directed Verdict

 In his cross-appeal, Officer Ogunjobi argues that the circuit court erred in denying his

motions for directed verdict because the evidence showed that he is entitled to official immunity

on Ms. Hendrix’s excessive force/battery claim. He argues that Ms. Hendrix put forth no

evidence that could overcome official immunity and support the jury’s verdict finding that he

used excessive force in arresting Ms. Hendrix. Ms. Hendrix argues that official immunity does

not apply and that she has put forth sufficient evidence to support the jury’s verdict.

 1. Standard of Review

 “The standard of review for failures to sustain motions for directed verdict and for JNOV

is essentially the same.” Rhoden v. Missouri Delta Med. Ctr., 621 S.W.3d 469, 477 (Mo. banc

2021), reh’g denied (June 1, 2021) (quoting Robinson v. Langenbach, 599 S.W.3d 167, 176 (Mo.

banc 2020)). “This Court must determine whether the plaintiff presented a submissible case by

offering evidence to support every element necessary for liability.” Id. We consider all evidence

in the light most favorable to the jury’s verdict and we give the plaintiff the benefit of all

reasonable inferences. Id. Conflicting evidence and inferences are disregarded. Id.

 “A directed verdict is a drastic measure that is not appropriate when the facts are such

that reasonable minds could draw differing conclusions.” Dodson v. Ferrara, 491 S.W.3d 542,

564 (Mo. banc 2016), as modified (May 24, 2016). We will reverse the jury’s verdict “only

where there is a complete absence of probative fact to support the jury’s conclusion.” Robinson,

599 S.W.3d at 176 (quoting Klotz v. St. Anthony’s Med. Ctr., 311 S.W.3d 752, 769 (Mo. banc

2010)).

 15
 2. Analysis

 Official immunity is a common law doctrine that protects public employees from liability

for certain torts committed during the performance of discretionary acts as part of their official

duties. Southers, 263 S.W.3d at 610; Richardson v. Sherwood, 337 S.W.3d 58, 63 (Mo. App.

W.D. 2011), as modified (Mar. 29, 2011). Official immunity protects “individual government

actors who, despite limited resources and imperfect information, must exercise judgment in the

performance of their duties.” Id. at 611.

 Official immunity applies to all discretionary acts, except those committed “in bad faith

or with malice.” State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. banc 1986). “An act

is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless

indifference to the rights of others.” Id. (quoting Grad v. Kaasa, 321 S.E.2d 888, 890–91 (N.C.

1984)). Official immunity can apply to law enforcement officers, but not when an officer “uses

more force than is reasonably necessary” when making an arrest. Neal v. Helbling, 726 S.W.2d

483, 487 (Mo. App. E.D. 1987); accord Schoettle v. Jefferson Cnty., 788 F.3d 855, 861 (8th Cir.

2015). “Unless a plaintiff can show that unnecessary force was used, courts will protect the

officer.” Neal, 726 S.W.2d at 487 (quoting Manson v. Wabash R.R. Co., 338 S.W.2d 54, 61

(Mo. banc 1960)).

 With respect to her excessive force/battery claim, Ms. Hendrix offered ample evidence

supporting her argument that Officer Ogunjobi used unnecessary force to effectuate her arrest.

Based on that evidence, the jury concluded that Officer Ogunjobi’s use of force exceeded the

level reasonably necessary to detain Ms. Hendrix. Nothing in the record suggests that this

verdict was erroneous, nor does Officer Ogunjobi even attempt to show that it was; rather, he

merely restates his perspective of the events that unfolded on the night of Ms. Hendrix’s arrest.

 16
However, we consider all evidence in the light most favorable to the verdict, grant all reasonable

inferences in favor of the plaintiff, and ignore conflicting evidence and inferences. See Rhoden,

621 S.W.3d at 477. Notably, the evidence and inferences, viewed in the light most favorable to

the verdict, establish that Ms. Hendrix never knew she was under arrest before being tased, that

Officer Ogunjobi tased her a second time before the officer instructing her to put her hands

behind his back even finished his sentence, and that she was in severe pain throughout her arrest.

This evidence is probative of the use of force being unnecessary and it supports the jury’s verdict

finding in favor of Ms. Hendrix. Overturning the verdict is therefore not warranted because

there is not a complete absence of probative evidence supporting the jury’s conclusion.

 Officer Ogunjobi’s Point is denied.

 E. Officer Wilson’s Motion for Attorney’s Fees

 Officer Wilson argues in his cross-appeal that the circuit court erred in denying him

attorney’s fees because § 563.074.2 makes an attorney’s fees award mandatory once an officer’s

absolute immunity is proven at trial. Section 563.074.2 states that “[t]he court shall award

attorney’s fees, court costs, and all reasonable expenses incurred by the defendant in defense of

any civil action brought by a plaintiff if the court finds that the defendant has an absolute defense

as provided in subsection 1 of this section.” Officer Wilson also argues that the statute conflicts

with Rule 55.19 and the statute should prevail. In response, Ms. Hendrix contends that Officer

Wilson never requested attorney’s fees in his pleadings, the jury made no finding concerning any

absolute defenses, and § 563.074.2 and Rule 55.19 do not conflict.

 1. Standard of Review

 We generally review a circuit court’s decision regarding attorney’s fees for an abuse of

discretion. Fowler v. Fowler, 504 S.W.3d 790, 803 (Mo. App. E.D. 2016). However, “this

 17
standard is based on the assumption that the court had the authority to award the fees.” Roller v.

Steelman, 297 S.W.3d 128, 131 (Mo. App. W.D. 2009) (quoting Washington Univ. v. Royal

Crown Bottling Co., 801 S.W.2d 458, 469 (Mo. App. E.D. 1990)). The scope of the circuit

court’s authority to grant or refuse attorney’s fees is a question of law that we review de novo.

See Lucas Stucco & EIFS Design, LLC v. Landau, 324 S.W.3d 444, 445 (Mo. banc 2010).

 2. Analysis

 Missouri follows the American Rule of attorney’s fees, meaning that parties generally

must pay the attorney’s fees that he or she incurs in litigation. Tupper v. City of St. Louis, 468

S.W.3d 360, 374 (Mo. banc 2015). One exception to this general rule is when a statute

authorizes attorney’s fees. Id.

 Rule 55.19 states that “[w]hen items of special damage are claimed, they shall be

specifically stated.” “[A]ttorney[’s] fees are special damages that must be pleaded specifically”

for a party to receive them. Scheck Indus. Corp. v. Tarlton Corp., 435 S.W.3d 705, 732 (Mo.

App. E.D. 2014) (emphasis added); accord Ruby v. Troupe, 580 S.W.3d 112, 115 (Mo. App.

W.D. 2019); Lau v. Pugh, 299 S.W.3d 740, 751 (Mo. App. S.D. 2009). This is true even when a

statute provides the basis for an attorney’s fees award. “[A] court may award any relief [a]

statute provides, including attorney[’s] fees, as long as the party has pleaded the necessary

elements of the act and has requested that relief in the prayer.” Lucas Stucco, 324 S.W.3d at

446 (emphasis added). Here, because Officer Wilson made no request whatsoever for attorney’s

fees in the Respondents’ joint answer to Ms. Hendrix’s petition, the circuit court had no option

but to refuse Officer Wilson’s request for them.4

4
 Officer Wilson filed a motion to amend his answer to include a request for attorney’s fees. The circuit court
denied the motion and Officer Wilson did not appeal that decision.

 18
 Contrary to Officer Wilson’s assertions, no conflict exists between § 563.074.2 and Rule

55.19, and we will not read one in here. See Sieg v. Int’l Envtl. Mgmt., Inc., 375 S.W.3d 145,

150 (Mo. App. W.D. 2012) (“To the extent there is any apparent discrepancy between a statute

and a Supreme Court Rule, we attempt to harmonize their provisions.”). Rule 55.19 does not

change or affect Officer Wilson’s right to attorney’s fees under § 563.074.2. The statute

provided Officer Wilson with a right to collect attorney’s fees if he established an absolute

defense to Ms. Hendrix’s claims, while the rule merely outlined the procedural steps Officer

Wilson needed to follow to receive them. However, by failing to request any attorney’s fees

pursuant to the statute, Officer Wilson failed to comply with the procedure outlined in Rule

55.19. Consequently, the circuit court did not err in denying his request.

 Officer Wilson’s Point is denied.

 IV. Conclusion

 For the reasons mentioned above, we affirm the circuit court’s judgment on all points.

 _______________________________
 Kelly C. Broniec, Presiding Judge

Colleen Dolan, J. and
John P. Torbitzky, J. concur.

 19